IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
MAACO FRANCHISING, INC.                 :
      Plaintiff,         :  CIVIL ACTION
  v.                                         :  NO. 12-5500
                         :
RICHARD O. TAINTER and                  :
DIANE E. TAINTER,                       :
      Defendants.        :
_____:

**Pratter, J.**                           **June 6, 2013**

<u>**MEMORANDUM OPINION**</u>

**I.  Introduction**

  Maaco Franchising, Inc. ("Maaco") filed an action against Richard and Diane Tainter, asserting various contractual breaches of a February 2, 2004 Maaco Enterprises, Inc. Franchise Agreement (the "Agreement"). Compl. Ex. 1 [Docket No. 3-1]. The Agreement is governed expressly by Pennsylvania law and contains a forum selection clause providing that any and all actions arising out of or relating to the Agreement shall be brought and litigated in a state or federal court of general jurisdiction in Pennsylvania. The Tainters now challenge the enforceability of the forum selection clause, and move to transfer the case pursuant to 28 U.S.C. § 1404 to the Northern District of California, where they reside. For the reasons set forth below, the Court will deny the Motion to Transfer Venue [Docket No. 2].[1]

**II.  Factual and Procedural Background**

  Maaco Franchising, Inc. is a Delaware corporation with its principal place of business in North Carolina. It is the successor-in-interest to Maaco Enterprises, Inc., which was a Pennsylvania corporation that had its principal offices in King of Prussia, Pennsylvania. In

---

[1] Plaintiff's Amended Complaint [Docket No. 3] and Defendants' Motion to Transfer Venue [Docket No. 2] were filed on the same date. In light of the fact that the allegations regarding venue in the Amended Complaint did not differ in any material way from those in the original Complaint, the Court considered the Motion to Transfer filed as to the Amended Complaint [Docket No. 4].

2004, Maaco entered into a Franchise Agreement with Richard and Diane Tainter, under which the Tainters opened a Maaco automotive painting and body repair shop in Palo Alto, California. In exchange for the use of the Maaco name and logo, training and access to Maaco's methods and procedures, and participation in Maaco's established network of vehicle painting and auto body repair shops, the Agreement required the Tainters to pay Maaco a weekly franchise fee equal to 9% of the shop's gross receipts and a weekly advertising fee of $850, and provide accurate weekly business reports of the shop's sales. Maaco contends that the Tainters breached the Agreement by failing to pay franchise and advertising fees, as well as by failing to comply with an audit.  Maaco alleges that, as of the date of the filing of this action in September 2012, that the Tainters owed $112,402.77 in unpaid fees and other costs.

      The Franchise Agreement includes both a choice-of-law provision stating that the Agreement shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania, Compl. Ex. 1 §24(A), and a forum selection clause providing that "any action arising out of or relating to this Agreement shall be commenced, litigated and concluded only in a state or federal court of general jurisdiction in the Commonwealth of Pennsylvania."  Compl. Ex. 1 §24(B).  Section 24(B) of the Agreement further states:  "Franchisee [the Tainters] irrevocably submits to the jurisdiction of such court and irrevocably waives any objection he may have to either the jurisdiction or venue of such court.  Franchisee further irrevocably agrees not to argue that Pennsylvania is an inconvenient forum or to request transfer of any such action to any other court."[2]

---

[2] The provision also called for the Franchisees to acknowledge they "ha[d] and will continue to develop a substantial and continuing relationship with Maaco at its principal offices in the Commonwealth of Pennsylvania, where Maaco's decision making authority is vested and franchise operations are conducted and supervised." Compl. Ex. 1 §24(B). Although Maaco's principal place of business moved to North Carolina in December 2011, Maaco continues to maintain offices in King of Prussia, Pennsylvania, and the parties do not dispute that Maaco has continued to conduct its relationship with the Tainters in part from those Pennsylvania offices.

      The Agreement also contains an integration clause, which reads:

> This Agreement, the documents referred to herein, and the attachments hereto, if any, constitute the entire, full and complete agreement between Maaco and Franchisee concerning the subject matter hereof, and supersede all prior agreements, no other representations having induced Franchisee to execute this Agreement.  No representations, inducements, promises or agreements, oral or otherwise, not embodied herein or attached hereto (unless of subsequent date) are made by either party, and none shall be of any force or effect with reference to this Agreement or otherwise.  No amendment, change or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.

Compl. Ex. 1 §22.

      The parties do not dispute that, "prior to purchase of [his] franchise," Richard Tainter also received a 2004 Maaco Franchise Disclosure Document ("FDD") containing as Item 17 the following language: "The following states have statutes that might supersede the Franchise Agreement in your relationship with us, including the areas of termination and renewal of your franchise . . . CALIFORNIA [Bus. & Prof. Code Sections 20000-20043] . . . ." Tainter Aff. ¶6.[3]

      Despite the indisputable clarity of the Agreement's language quoted above, the Tainters now argue that the forum selection clause is invalid because the parties did not "reach a meeting of the minds," and therefore "never agreed to a forum outside California," or if there *was* agreement, the forum selection clause should not be enforced because it contravenes California's "strong public policy" disfavoring the enforcement of out-of-state forum selection clauses, pursuant to California Business & Professions Code § 20040.5, which voids such provisions. Finally, the Tainters argue that, even if the forum selection clause is valid and enforceable, other factors weigh in favor of transferring this action to the Northern District of California.

---

[3] Mr. Tainter does not suggest, however, that the FDD was attached to the Franchise Agreement or provided to him after he signed the agreement (*i.e.*, that it was "of subsequent date").  The FDD is not referred to or expressly incorporated by any language in the Agreement, and is therefore not integral to the Agreement itself.

### III. Legal Standard

A district court may decide "[f]or the convenience of parties and witnesses, in the interest of justice," to transfer any civil action to any other district or division where the action might have been brought. 28 U.S.C. § 1404(a).[4] "Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation omitted). Nevertheless, the moving party—here, the Tainters—bears the burden of establishing that the transfer is necessary. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In *Jumara*, the Third Circuit enumerated many factors, private and public, courts have considered when determining whether to transfer an action pursuant to § 1404(a). Private interests considered include: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records . . . ." *Jumara*, 55 F.3d at 879 (citations omitted). Public interests may include: "the enforceability of the judgment; practical considerations that could

---

[4] Specifically, the Tainters move for transfer to the Northern District of California "under § 1404(a) . . . on the grounds of improper venue, pursuant to 28 U.S.[C]. § 1406(a)." Section 1404(a) provides for transfer of a case where both the original and the requested venue are proper, whereas § 1406(a) applies where the original venue is improper. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Although the Tainters argue that the forum-selection clause requiring this case to be heard in Pennsylvania is invalid, they do not appear to argue that venue is otherwise *improper* in the Eastern District of Pennsylvania. In a diversity action, venue is proper in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391. The parties do not dispute that Maaco was incorporated and had its principal place of business in this District at the time the Franchise Agreement was signed, and Maaco has continued to manage its relationship with the Tainters from its offices in this District throughout many of the events giving rise to these claims. Likewise, Maaco does not argue that venue is improper in the Northern District of California, where both defendants reside and where, again, a substantial portion of the events leading to these claims took place. Because venue is proper in both the Eastern District of Pennsylvania and the Northern District of California, the Court will conduct the appropriate balancing test under 28 U.S.C. § 1404(a).

make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-880 (citations omitted). "Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." *Id.* at 880. The parties' agreement as to the proper forum is entitled to "substantial consideration," but is not necessarily dispositive. *Id.* However, where the forum selection clause is determined to be valid, the moving party bears the burden of demonstrating why it should not be bound by its contractual choice of forum. *See id.*

  IV.  **Discussion**

   a. **Validity of the Forum Selection Clause**

As a preliminary matter, it is necessary to determine whether the forum selection clause is valid. "In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law. . . . [b]ecause questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature . . . ." *Jumara* at 877 (citation and quotation marks omitted); *Feldman v. Google*, *Inc.*, 513 F. Supp. 2d 229, 235 (E.D. Pa. 2007). Under federal law, forum selection clauses are presumptively valid and enforceable "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("The threshold question is whether th[e] court should . . . give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause. There are compelling reasons why a freely negotiated private . . .

agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect." *Id.* at 12-13.). Accordingly, "[a] forum selection clause will be invalidated only if the resisting party can show (1) the clause was invalid for such reasons as fraud or overreaching, or (2) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, or (3) that enforcement of the clause would be so gravely difficult and inconvenient as to be unreasonable and unjust and that it would deprive the party of its day in court." *Intermetals Corp. v. Hanover Int'l Aktiengesellschaft Fur Industrieversicherungen*, 188 F. Supp. 2d 454, 458 (D.N.J. 2001) (citing *Bremen*, 407 U.S. at 10, 15, 18); *Feldman*, 513 F. Supp. 2d at 246.[5]

The Tainters argue that the forum selection clause at issue here is invalid because the parties allegedly did not "agree" to a forum outside of California. In this regard, the Tainters rely solely on the Ninth Circuit's holding in *Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095, 1097 (9th Cir. 1999). In *Laxmi*, the court reasoned that there was "no meeting of the minds on the forum-selection provision" (and therefore no agreement) because § 20040.5 of the California Business and Professions Code prohibits franchise agreements from restricting venue to a forum outside of California.[6] Notwithstanding his execution of the Agreement with its express choice of law and forum selection provisions, Richard Tainter posits that he never agreed to a forum outside California, because the Franchise Disclosure Document he received before signing the Agreement—which was not expressly part of the Agreement—stated that some states including California, "might have statutes that supersede the Franchise Agreement,". Tainter

---

[5] The Tainters do not allege any "fraud" or "overreaching" on the part of Maaco that would render the forum selection clause here unenforceable. Likewise, the Tainters do not appear to argue that the difficulties, inconveniences, or expenses of litigating in this District—although relevant to the Court's consideration of the *Jumara* factors below—are so great as to potentially deprive the Tainters of their "day in court."

[6] Cal. Bus. & Prof. Code Ann. § 20040.5 (2008) provides: "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state."

Aff. ¶¶ 6-7.[7]  He also attests that he believed, regardless of all the Franchise Agreement language to the contrary, that the parties to the Franchise Agreement would be required to comply with the California laws which void out-of-state forum selection clauses.  Eschewing his own role as a signatory to the Agreement, Mr. Tainter asserts that at no time did Maaco "ever indicate to me that it would disregard Section 20040.5 and insist upon a non-California forum."  Tainter Aff. ¶8.

The reasoning of *Laxmi* is not persuasive.  The language of the Franchise Agreement is perfectly clear and unambiguous in stating that the Agreement shall be interpreted and construed under the laws of the Commonwealth of Pennsylvania, that any action arising out of or relating to the Agreement shall litigated only in a state or federal court in Pennsylvania, and that the Franchisee irrevocably submits to the jurisdiction of such court and irrevocably waives any objection he may have to either the jurisdiction or venue of such court.  At the very least, such language is plainly an "indication" that Maaco would insist upon the non-California forum identified in the Agreement.  Furthermore, the integration clause not only limits the terms of any agreement between the parties to the Franchise Agreement itself, but also explicitly requires the Franchisee to confirm that "no other representations hav[e] induced Franchisee to execute this Agreement," and "no representation, inducements, promises or agreements, oral or otherwise, not embodied herein or attached hereto (unless of subsequent date) are made by either party, and none shall be of any force or effect with reference to this Agreement or otherwise."  A separate

---

[7] Similarly, in *Laxmi*, plaintiff franchisees were provided with a Uniform Franchise Offering Circular ("UFOC") prior to signing their franchise agreement, which read in pertinent part:  "California Business and Profession Code Sections 20000 through 20043 provide rights to the Franchisee concerning termination or non-renewal of a franchise.  If the Franchise Agreement contains a provision that is inconsistent with the law, the law will control.  The Franchise Agreement requires application of the laws of Oklahoma.  This provision may not be enforceable under California law."  *Laxmi*, 193 F.3d at 1096.  Documents such as the FDD and UFOC are required to be provided to potential California franchisees under California franchise regulations.  Cal. Code Regs. Tit. 10, ch.3 §310.114.1(c)(5)(A).

franchise disclosure document, provided to a potential franchisee before the execution of the agreement and stating only that some terms of the Agreement might be superseded by certain California law, is insufficient to negate the Tainters' express agreement to litigate in a Pennsylvania forum. *Cf. Cottman Transmission Sys., LLC v. Kershner*, 536 F. Supp. 2d 543, 552-54 & n.8 (E.D. Pa. 2008) (holding that Pennsylvania's parol evidence rule bars a franchisee from claiming reliance on a Uniform Franchise Offering Circular where the parties later executed an integrated contract).

Next, the Tainters contend that, even assuming there was "agreement" as to the chosen forum, the forum selection clause is unenforceable because it contravenes California's strong public policy—embodied in Section 20040.5—against enforcing any out of state forum selection clause in a franchise agreement involving a California franchisee operating in California. The proper inquiry under *Bremen*, however, is not whether enforcement of a forum selection clause would contravene *any* strong public policy, but whether it would "contravene a strong public policy of the forum *in which the suit is brought*." *Bremen*, 407 U.S. at 15 (emphasis added).[8] Thus, it is the public policy of Pennsylvania, not California, that must be considered. This particular forum selection clause does not appear to violate any public policy of Pennsylvania. "Indeed, it would be consistent with the public policy of this forum to enforce the forum selection clause in order to give force to the parties' agreement." *Feldman*, 513 F. Supp. 2d at 247.

Of the few federal courts outside of California that have considered this issue under similar circumstances, the majority have not invalidated forum selection clauses or opted to

---

[8] It is not surprising, therefore, that the Tainters are able to cite any number of cases brought *in California* in which the *California* state and federal courts have invalidated out-of-state forum selection clauses pursuant to Cal. Bus. & Prof. Code §20040.5. Such cases are of no moment here, however.

transfer cases to California pursuant to Section 20040.5.  *See, e.g., TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 750, 760 & n.9 (N.D. Tex. 2009) ("The only argument defendants make concerning the enforceability of the forum selection clause is that it is void under California law. . . . Defendants do not explain in any detail why this court should apply California law to void a franchise agreement that provides that Texas law applies to all matters relating to the agreement, and that Texas is the forum for any disputes relating to the agreement. Moreover, a choice of forum clause should not be enforced if it 'would contravene a strong public policy of the forum *in which the suit is brought*.'  TGIF brought this suit in Texas, and defendants do not contend that enforcing the clause would contravene a strong public policy interest of Texas.  Additionally, as noted, the parties agreed in the franchise agreements that Texas law applies to all matter relating to the agreements.  Under these circumstances, California law simply does not come into play, and the question whether enforcement would contravene California policy is not one that the court need consider.") (emphasis in original) (citation omitted); *Hoodz Int'l, LLC v. Toschiaddi*, No. 11-15106, 2012 WL 883912, at *4 (E.D. Mich. Mar. 14, 2012) ("As an initial matter, Defendants fail to articulate why the venue question implicates [§ 20040.5], or any other California law, in the context of this dispute.  The relevant contracts expressly state that they should be interpreted under Michigan law.").  *But see Homewatch Int'l, Inc. v. Pac. Home Care Servs., Inc.*, No. 10-3045, 2011 WL 1660612, at *3 (D. Colo. May 2, 2011) (applying California law to a franchise agreement expressly governed by Colorado law and finding the forum selection clause void and unenforceable as contrary to strong and express California public policy, but noting that this finding does not by itself mandate transfer to a California court).  *Cf. Cottman Transmission Sys., LLC v. Kershner*, 492 F.

Supp. 2d 461, 467–71 (E.D. Pa. 2007) (holding that application of a Pennsylvania choice-of-law provision was contrary to the California policy where California had a "materially greater interest" than Pennsylvania in the underlying issues, and standards and remedies available under California franchise statutes provided substantially greater "quality of protection" to franchisees).[9]  Based on the plain language of the parties' agreement, and the Tainters' failure to show that enforcement would be unreasonable, Court finds that the forum selection clause at issue here is both valid and enforceable.  This does not, however, conclude the Court's inquiry.

### b. Transfer Pursuant to § 1404(a)

A valid forum selection clause, as evidence of the parties' choice of a particular forum, weighs heavily in favor of litigating a case that forum; nonetheless, as noted above, the presence of such a clause does not receive "dispositive weight."  *Jumara*, 55 F.3d at 880.  Therefore, regardless of the validity of the forum selection clause, the Court must also consider the remaining *Jumara* factors to determine whether transfer would be appropriate nonetheless.  Here, with a few exceptions, the remaining *Jumara* factors either weigh against transfer, or weigh neither heavily in favor of nor against transfer.

As to the private interest factors enumerated in *Jumara*, it obviously would be more convenient for the Tainters personally to defend this action in California; that is, where the

---

[9] The Tainters "propose that California has strong statutory protections of its franchisees under both the California Franchise Investment Act and the California Franchise Relations Act. Moreover, under California law, post-termination covenants not to compete are not enforceable.  At the very least, California law should apply to any attempt by Plaintiff to enforce the covenant not to compete contained in the Franchise Agreement." Mot. to Transfer at 15-16.  This argument is inapposite, however, because the parties' arguments regarding choice of law (rather than choice of forum) can be heard in either Pennsylvania or California.  Furthermore, Maaco has brought claims related only to the Tainters' failure to pay franchise fees and advertising costs, and failure to provide appropriate records pursuant to a duly authorized audit.  Nowhere in the Amended Complaint does Maaco allege that the Tainters have violated a covenant not to compete, and the Tainters have not identified any greater or different defenses to the existing claims that California law might provide.  The Court does <u>not</u> at this time determine once and for all whether Pennsylvania law will apply to the underlying claims; nonetheless, for the purpose of evaluating the Motion to Transfer, the Court assumes that the parties' Pennsylvania choice of law provision is valid and enforceable.

Tainters reside and where the franchise itself, its books and records, and defense witnesses are no doubt more readily available.  However, "[t]he purpose of a transfer is not to shift the inconvenience from one party to another." *E'Cal Corp. V. Office Max Inc.*, No. 01-3281, 2001 U.S. Dist. LEXIS 15868, at * 11 (E.D. Pa. Sept. 10, 2001).  Moreover, "[w]hatever 'inconvenience' [the Tainters] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting." *Bremen*, 407 U.S. at 17-18.  Because Maaco continues to conduct substantial business from its Pennsylvania offices, and maintained its relationship with the Tainters from its Pennsylvania offices for many years, witnesses and documents are also located in this District.  Although Maaco is now headquartered in North Carolina, it maintains offices in King of Prussia, Pennsylvania, and therefore plausibly asserts that litigation will be more convenient for Maaco in this District than in California.  Aspects of the claim "arose" in several locations:  California, where the Tainters' franchise is located; in Pennsylvania, where the Franchise Agreement was accepted and administered; and in North Carolina, where the Agreement has also been administered.  None of these private interests appears to weigh heavily in favor of litigating the matter in any particular forum.  In the absence of significant countervailing factors, "plaintiff's choice of venue should not be lightly disturbed," *Jumara*, 55 F.3d at 879 (citations omitted); therefore "courts normally defer to plaintiff's choice of forum" which in this case is *also* the forum which the parties "ha[ve] already freely contractually chosen." *Id*. at 880.

      Many of the "practical considerations that could make the trial easy, expeditious, or inexpensive" support transfer to the Northern District of California where, as noted above, the Tainters, the franchise, and a substantial number of documents and witnesses may be located.

With regard to the public interest factors identified in *Jumara*, the Tainters correctly point out that any judgment in this action would need to be enforced in California.  But "there is little significant difference in enforcing a judgment in one federal forum than in another."  *E'Cal*, 2001 U.S. Dist. LEXIS 15868, at * 13.

The remaining public factors, however, support denying the motion to transfer.  As to the relative congestion of the two district courts, Maaco has presented statistics showing that cases are resolved more quickly in the Eastern District of Pennsylvania than in the Northern District of California.  While the Tainters argue that California has a significant interest in deciding the "local controversy" involving a California franchisee, Pennsylvania courts have an equal interest in deciding a controversy involving an agreement ostensibly governed by Pennsylvania law, and entered into by a business that had its principal place of business in Pennsylvania at the time of execution and continues to maintain a significant presence in this District.  Pennsylvania also has a significant public policy interest in seeing that contracts governed by Pennsylvania law are properly enforced and, as discussed above, enforcement of the forum selection clause is consistent with Pennsylvania public policy.  Finally, although this case appears to be a relatively straightforward breach of contract dispute, the Pennsylvania courts are necessarily more familiar with contracts governed by Pennsylvania law.  On the whole, therefore, these public factors support litigating the case in this District.

### V.     Conclusion

Accordingly, for the reasons set forth above, the Court concludes that the parties' forum selection clause is valid and enforceable, the Tainters have failed to meet their burden in demonstrating that this action should be transferred to the Northern District of California

pursuant to 28 U.S.C. § 1404(a), and the Motion to Transfer will be denied.  An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE